UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-06-14-B-W |
| | ) | |
| STEVEN LEMIEUX | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING ORDER**

While on state probation for the misdemeanor crime of domestic assault, Steven Lemieux falsely denied his conviction on an ATF form 4473 in an attempt to purchase a firearm. After a jury trial in which he was found guilty, he claimed entitlement to the sporting purpose reduction at the time of sentencing. This Order explains the Court's conclusion that the fact Mr. Lemieux was on state probation when he attempted to purchase the firearms does not by itself bar application of the sporting purpose reduction.

**I.    Background**

   **A.  The Domestic Assault Conviction and Probation**

On February 4, 2004, Steven Lemieux was convicted in state of Maine district court of domestic assault, a Class D misdemeanor, and was sentenced to one year of probation. The court issued a standard list of probation conditions, which included: "You shall not own, possess or use any firearm or dangerous weapon if you have ever been convicted of a crime in any jurisdiction with a potential penalty of one year or more or any crime involving domestic violence or the use of a firearm or dangerous weapon." *See* Govt. Ex. 1. The underlying assault did not involve the use of firearms. *See* Govt. Ex. 3 at 12. Mr. Lemieux appealed the conviction to the Maine Supreme Judicial Court and on January 5, 2005, the conviction was affirmed. On

March 10, 2005, state agents, acting on information that Mr. Lemieux continued to possess firearms, executed a search warrant on the Defendant's house and seized nine firearms[1] and ammunition. On August 19, 2005, the state court found that Mr. Lemieux had violated one or more of the conditions of probation, ordered him to serve 77 days incarceration, and terminated his probation. *See* Govt. Ex. 2.

### B. The Federal Charges

On February 8, 2006, a federal grand jury issued a two-count indictment, charging Mr. Lemieux with two violations of 18 U.S.C. § 922(a)(6), providing false information to a federal firearms licensee. The conduct underlying the current § 922 charges involved two attempts by Mr. Lemieux – on January 12, 2005 and August 29, 2005[2] – to purchase a Supercomanche .45 caliber pistol from a firearms dealer. For each attempt, the Government charged that Mr. Lemieux made false statements to the dealer, in that he answered "no" to the question "Have you ever been convicted of a misdemeanor crime of domestic violence?" On February 10, 2006, Mr. Lemieux entered a plea of not guilty to each of the two counts contained in the indictment. After a one-day jury trial on April 4, 2006, Mr. Lemieux was found guilty on both counts.

## II. Discussion

### A. The Government's Position

At issue is whether Mr. Lemieux's probationary status at the time of the first offense, including a general probation condition against possessing firearms, prohibits application of the sporting purpose reduction under U.S.S.G. § 2K2.1(b)(2). The Government contends the

---

[1] The full inventory of the search included the following prohibited firearms: (1) Mossberg, 30-06 rifle with scope; (2) SKB, 12 gauge shotgun; (3) New England Firearms, 410 gauge shotgun; (4) Savage Arms rifle/shotgun; (5) Winchester, .22 long rifle; (6) Harrington Richardson, 10 gauge shot gun; (7) Taurus, 357 revolver and 6 rounds of live ammunition; (8) Sport Arms, 22 caliber long rifle revolver; and, (9) Savage Arms, 223 caliber 12 gauge over/under gun. Two other firearms were so-called "black powder" firearms. *Govt.* Ex. 6. These weapons do not fit within the statutory definition of "firearm" and are not counted. *See* 18 U.S.C. § 921(a)(3), (a)(16)(C).

[2] The second count is mentioned here for the sake of completeness. The state court terminated Mr. Lemieux's state probation on August 19, 2005, after he served the prison term imposed due to his probation violation.

2

sporting purpose reduction is unavailable to Mr. Lemieux for four reasons:  1) because the Defendant's possession of a firearm violated "local law" as used in § 2K2.1(b)(2); 2) because § 2K2.1(b)(2) applies only to "lawful sporting purposes" and his possession of firearms was unlawful; 3) because the guidelines in the calculation of criminal history treat probated defendants more harshly; and, 4) because the policies underlying the probation restriction and the general prohibitions of criminal law are not identical and, therefore, the probation restriction is not superfluous.  Alternatively, if the probation restriction does not bar application of the sporting purpose reduction, the Government asks that the Court take the Defendant's probated status into account in assessing the factors under § 2K2.1(b)(2) and deny the sporting purpose reduction in any event.

**B.  The Defendant's Response**

Defendant responds by asserting that but for his probated status, he would be entitled to the sporting purpose reduction, since he has been an avid sportsman, has hunted for years, and there is no evidence of any actual use of the firearm inconsistent with a sporting purpose. Mr. Lemieux next argues that the general terms of the state probation were congruent with the general prohibitions of federal criminal law and, therefore, the fact of his probation was superfluous.

**C.  The Sporting Use Reduction and Applicable Case Law**

Section 2K2.1(b)(2) reads:

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

U.S.S.G. § 2K2.1(b)(2).  The guideline commentary enumerates relevant circumstances for the Court to consider, including "the number and type of firearms, the amount and type of the ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history, . . . and the extent to which possession was restricted by local law." Section 2K2.1(b)(2) operates as a reduction and because it benefits the Defendant, Mr. Lemieux has the burden "of proving, by a preponderance of the evidence, that he is entitled to the reduction."  *United States v. Denis*, 297 F.3d 25, 32 (1st Cir. 2002); *United States v. Cousens*, 942 F.2d 800, 802 (1st Cir. 1991).  The Court and the parties have been unable to locate any First Circuit authority directly on point and therefore, the Court will turn to the law of other circuits for guidance.

The Fifth Circuit addressed a similar issue in *United States v. Shell,* 972 F.2d 548 (5th Cir. 1992).  In *Shell*, the defendant, having previously been convicted of burglary, attempted to acquire a firearm, falsely denying his prior conviction on an ATF form.  *Id.* at 549. "[C]onstrained to clarify . . . any perceived murkiness" from the combined effect of two prior cases, the court in *Shell* noted that the fact a person was a felon could not prevent the defendant from receiving the sporting purpose reduction, since "that statement would swallow the reduction guideline itself."  *Id.* at 551.  *Shell* pointed out that "[a]s the guideline only applies to convicted felons who obtain or possess firearms and, by definition, convicted felons can never legally obtain or possess guns, there would be no class of persons eligible for the 6-level reduction under such a reading." *Id.*  According to the Fifth Circuit, "the availability of the reduction turns on the purpose or use for which the firearm is acquired or possessed and the lawfulness of such use if it were to be exercised by a citizen not under any legal disability . . . ."

4

*Shell*, 972 F.2d at 552. *Shell* stands for the common-sense notion that a convicted felon may be eligible for the sporting use reduction under § 2K2.1(b)(2).

*Shell* was followed by the Eighth Circuit case of *Untied States v. Waggoner*, 103 F.3d 724 (8th Cir. 1997). In *Waggoner*, the defendant "went pheasant hunting, . . . violating a special condition of his probation and the federal statute barring felons from possessing firearms . . . ." *Id.* at 725. Mr. Waggoner, a federally licensed taxidermist, had pleaded guilty to one count of unlawful sale and barter of migratory birds, a federal felony, and was sentenced to one year in prison and three years probation with a special condition "not to participate in hunting activity while on probation." *Id.* Mr. Waggoner violated both federal criminal law and the terms of his probation when he purchased two collector's firearms and falsely filled out the ATF forms. *Id.* He further violated the terms of his probation by obtaining hunting permits and actually going hunting. *Id.* Mr. Waggoner was later found to have violated the conditions of his probation and he was sentenced to additional time in prison. *Id.* He also, however, was federally charged and convicted of being a felon in possession. *Id.* at 726.

At sentencing, the district court denied application of the sporting purpose reduction to Mr. Waggoner, because "hunting in violation of a condition of probation is not a lawful sporting use." *Id.* at 725. On appeal, the court focused on the applicability of the sporting purpose of the firearms. Because defendant violated two court orders by hunting, *Waggoner* held that purpose of possessing the guns was unlawful. *Id.* at 727.[3] The court expounded on its decision to deny the sporting purpose reduction:

> Waggoner's special condition of probation was not only that he refrain from hunting with a firearm – that would have been superfluous to the general condition that he obey all laws, including § 922. Rather, Waggoner was prohibited from all "hunting activity," which would include activities such as hunting with bow and arrow, or enlisting friends or customers to shoot migratory

---

[3] The court however, noted that the denial of the reduction was "peculiar" to the defendant's § 922 offense. *Id*.

5

> birds that he could then illegally mount and sell. Waggoner violated this special condition. He committed the violation by using a firearm that was in his possession for this *unlawful* sporting purpose.

*Waggoner*, 103 F.3d at 727.

The dissenting opinion in *Waggoner* argued that the majority rendered the sporting purpose reduction a nullity, since "the provision applies only to the receipt, possession, or transportation of firearms by 'prohibited persons,' or persons who could not lawfully possess them." *United States v. Waggoner*, 103 F.3d 724, 728 (8th Cir. 1997) (Bright, J., dissenting) (quoting *United States v. Buss*, 928 F.2d 150, 152 (5th Cir. 1991)). In the dissent's view, the rationale for the reduction is that "the Sentencing Commission intended to sentence felons in possession who use guns in a manner not involving criminal activity or with the potential to harm other people less severely than other felons in possession." *Id*. Applying the Fifth Circuit's reasoning from *Shell*, the dissenter argued that if the legal impediment of this special probation condition were removed, the defendant's hunting activities would have been lawful. *Id*. at 729. The dissent further asserts that, "under the majority's reasoning, virtually no individual on probation can receive a [sporting purpose] reduction because probation orders include boilerplate conditions that the probationer obey all federal and local laws. A probationer who carries a gun, for example, violates federal law. Thus, every probationer who hunts violates a condition of probation and could theoretically be held in contempt." *Id.* at 730.

In 2006, Judge Adelman also considered the question. In *United States v. Maas*, 428 F. Supp. 2d 888 (E.D. Wisc. 2006), both the defendant and the government argued for application of the sporting purpose exception under U.S.S.G. § 2K2.1(b)(2). As a convicted felon, the defendant had illegally possessed two firearms – a rifle and a shotgun – but solely for hunting purposes. *Id*. at 890. The government charged the defendant under 18 U.S.C. § 922(g) and

6

under a federal statute prohibiting transportation in interstate commerce of wildlife obtained in violation of state law.[4]  *Id*. at 889.  Because the defendant did not use the guns to commit the latter offense, and because the wildlife count did not allege illegal hunting, the court concluded that *Waggoner* did not control and instead applied the sporting purpose reduction to the defendant.  *Id*. at 890.

Although there is no controlling First Circuit case law, this Court recently considered this issue.  *See United States v. Hayford*, No. CR-06-27-B-W.[5]  In *Hayford*, the defendant had been convicted of domestic assault, and by law and under the terms of his probation was prohibited from possessing a firearm.  This Court concluded that the probation condition was redundant.  Unlike *Waggoner*, there were no probation conditions different from the general prohibitions of criminal law and this Court found that the defendant was entitled to the sporting purpose exception.

### D. Evidence at the November 13, 2006 Hearing

The sentencing hearing was held on November 13, 2006.  The Defendant called as a witness Pauline Bickford, his next door neighbor.  Ms. Bickford and her husband own an abutting farm and they had hired Mr. Lemieux to rebuild their barn and stables.  According to Ms. Bickford, Mr. Lemieux is not only an excellent mason and carpenter, but he is also an accomplished horseman and hunter.  In fact, he has trained his Canadian horses so that he is able to ride them while hunting deer and other game.  She was unaware of any security issues the Defendant had been experiencing and she said he generally left his doors unlocked.  The

---

[4] The defendant had shot two waterfowl out of season in North Dakota and transported them to Wisconsin.  *Maas*, 428 F. Supp. 2d at 889.

[5] In *Hayford*, the Court did not issue a written sentencing order, but rather sentenced the defendant in an oral ruling from the bench.

Defendant also placed into evidence that he had obtained numerous resident hunting licenses over the past few years.

The Government introduced the police records from the March 10, 2005 state police search of the Defendant's home. The search produced nine firearms, all of which, possibly barring one, were hunting weapons. The one possible exception was a Taurus 357 handgun, which was located in his bedroom. The Government also introduced transcripts of the Defendant's prior court appearances, which confirm an unusual degree of stubbornness.

**E.	Findings**

Mr. Lemieux has not presented the most compelling claim for the sporting purpose reduction; he did not testify at the sentencing hearing and there are gaps in the evidence. The guidelines list the following considerations: the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history, and the extent to which possession was prohibited by local law. U.S.S.G. § 2K2.1, App. Note 7. Mr. Lemieux lives on a farm in rural Maine and there is substantial evidence of his devotion to hunting. All nine weapons, save possibly one, are consistent with his keen interest in the sport. At the time of the search, the weapons were located for the most part in his attic and there were other weapons, such as a crossbow and compound bow, consistent with hunting. The ammunition in the residence was proper for the weapons found in the house. There was no evidence of any misuse of a firearm. Mr. Lemieux's criminal history is limited to his altercation with his ex-wife, leading to his convictions for domestic assault and disorderly conduct. There is no criminal history involving the use of a firearm; Mr. Lemieux did not use or threaten to use a firearm during the domestic assault and his two attempts

to purchase a firearm seem to have been related to hunting. Other than his probation condition, Mr. Lemieux's possession of firearms was not restricted by local law.

One possible exception is the 357 Taurus handgun, which was found in his bedroom and could well have been used for self-protection. However, Ms. Bickford confirmed that Mr. Lemieux had no security concerns and, in view of the overwhelming evidence that his firearm possession was directed to his keen interest in the sport, the Court infers that his possession of the 357 Taurus was related to hunting, not to self-protection or other non-sporting uses. The Court, therefore, finds that the Defendant "possessed all ammunition and firearms solely for lawful sporting purposes" and he "did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." U.S.S.G. § 2K2.1(b)(6).

### F.     Availability of the Sporting Purpose Reduction

This leaves the legal question as to whether the Defendant is prohibited from claiming the sporting purpose reduction because he was on probation at the time of the first attempted purchase.

#### 1.     The "Local Law" Exclusion

The Government points to the language in the commentary to § 2K2.1(b)(6), which lists among other considerations the "extent to which possession was restricted by local law." It argues that the state probation restriction was such a local law and, therefore, the sporting use reduction should be unavailable to the Defendant. Even if the Government is correct,[6] to the extent he violated "local law," this would only be one factor the Court should consider and would not alone necessarily make the sporting purpose reduction unavailable.

---

[6] The Court is not at all clear that the Government is correct that the phrase "local law" extends to general state-imposed probation conditions against firearms possession. It would seem more likely to apply to firearm regulations applicable to the location where the possession occurred. *See United States v. Bossinger*, 12 F.3d 28, 30 (3d Cir. 1993) ("We hold, therefore, that a firearm possessed solely for lawful sporting purposes includes a firearm possessed solely for plinking in a manner lawful in the location where the plinking is conducted.").

9

### 2.     The Lawfulness Requirement

Emphasizing the requirement that any sporting purpose be "lawful," the Government contends that because Mr. Lemieux's attempted possession of the firearm was not lawful under the terms of his state probation, he must not be entitled to the sporting purpose reduction. The Government argues that *Waggoner*, *Shell*, and *Maas* are distinguishable, noting that those courts focused on whether the defendant's use of the firearm was lawful and failed to analyze whether the defendant's possession of the firearm in the first place was lawful.

The sporting purpose reduction is curious, since it reduces the sentencing range for the possession of firearms for lawful sporting purposes for a defendant convicted of illegal possession. If a person's possession of a firearm is illegal, it would seem that his possession of the firearm for sporting purposes could not be lawful. Yet, an analysis of § 2K2.1 suggests that the sporting purpose reduction is available for some defendants who have been convicted of illegal possession. Section 2K2.1 generally addresses the "unlawful receipt, possession, or transportation of firearms or ammunition" and "prohibited transactions involving firearms and ammunition." It establishes significant base offense levels ranging from 26 to 18 for the possession of certain types of weapons, and especially for those defendants with prior convictions for crimes of violence or controlled substance offenses. U.S.S.G. § 2K2.1(a)(1)-(5). Individuals who do not have these aggravating factors are treated more gently; the base offense levels run from 14 to 6. U.S.S.G. § 2K2.1(a)(6)-(8).

The sporting purpose reduction tracks this general guideline scheme. It is unavailable to the more culpable and, by implication, available to the less culpable. The provision expressly prevents application to certain types of persons and possessions, including the possession by individuals previously convicted of drug offenses or crimes of violence, and the possession of

10

such weapons as short-barreled shotguns. U.S.S.G. § 2K2.1(b)(2) ("If the defendant, *other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5)*, possessed . . . .") (emphasis supplied). There is, however, nothing in the section that suggests that a person whose base offense level is set by subsections (a)(6), (a)(7), or (a)(8) would not be eligible for the sporting purpose exception. Mr. Lemieux's base offense level was set by (a)(6) and, therefore, the sporting purpose reduction would be available to him, despite the general illegality of his possession.

If the sporting purpose reduction were interpreted in the fashion urged by the Government, the guidelines would have created an illusory sentencing reduction, since no one convicted of illegal possession of a firearm could ever obtain the reduction. Such a result would be contrary to the scheme of the guideline itself.[7] For the purposes of hunting, target practice, and other sporting purposes, use and possession are inextricably entwined and to interpret the guideline to provide lesser sentencing levels for the sporting *use* of a firearm, so long as the person did not *possess* the firearm, would be manifestly absurd.

### 3. The Section 4A1.1(d) Criminal History Adjustment

The Government calls attention to U.S.S.G. § 4A1.1(d), which provides a harsher penalty for a defendant who commits an offense while on probation. The Government argues, through a hypothetical situation, that if a defendant on probation enjoys the advantage of the sporting use

---

[7] The Government's reliance on *Waggoner* is misplaced. *Waggoner* distinguished the case where the person is prohibited from firearms possession:

> But, Waggoner's special condition of probation was not only that he refrain from hunting with a firearm -- that would have been superfluous to the general condition that he obey all laws, including § 922. Rather, Waggoner was prohibited from all "hunting activity", which would include activities such as hunting with a bow and arrow, or enlisting friends or customers to shoot migratory birds that he could then illegally mount and sell. Waggoner violated this special condition.

*Waggoner*, 103 F.3d at 727.

reduction, § 4A1.1(d) would become a nullity.[8] The Government's argument here is incorrect. First, as the Government's hypothetical establishes, the sentencing range for a defendant who receives a sporting purpose reduction is often, though not invariably, affected by whether he was on probation at the time of the offense. Moreover, because in calculating criminal history, the sentencing guidelines may treat individuals who commit crimes while on probation more severely than those who are not, does not mean that the other, more lenient provisions of the guidelines should necessarily be unavailable to them.

### 4.     Policy Arguments

The Government argues that Mr. Lemieux's federal prohibited status should not be considered superfluous to his state prohibited status because they serve different purposes. The Government contends that while the purpose underlying the federal prohibition on possession of firearms is to protect the public, the state prohibition – no possession of firearms during the probation period – has the additional purpose of safeguarding the defendant's state probation officer.

---

[8] To illustrate, the Government used a hypothetical situation:
> [C]onsider the example of Defendant A and Defendant B, both of whom are convicted of violating 18 U.S.C. § 922(a)(6) and both with one prior conviction for a misdemeanor crime of violence, but the former having committed the federal offense while on probation, and the latter while not. At sentencing, Defendant A would get a two point criminal history score enhancement in recognition of the fact that he committed the offense while on state probation. Yet, assuming both Defendant A and Defendant B could prove to the Court that they intended to use the firearms they attempted to purchase for lawful sporting purposes, both would receive a sentence of 0-6 months. Defendant A who committed the offense while on state probation, would be treated the same under the guidelines as Defendant B who did not. In effect, the U.S.S.G. § 4A1.1(d) criminal history score enhancement would become a nullity. This cannot be what the Sentencing Commission intended.

*Govt. Memo.* at 6-7. At the sentencing hearing, the Government conceded that the hypothetical as posed would have resulted in a different sentencing range: Defendant A's sentencing range would have been 1-7 and Defendant B's would have been 0-6. To arrive at the same sentencing range, the defendants would each have had to accept responsibility, reducing their offense level to 4 and resulting in a 0-6 range for each. What the hypothetic, with and without acceptance, illustrates is that the addition of criminal history points due to the probation violation has a varied impact, depending on the individual circumstances of each case.

The protection of probation officers is certainly a proper regulatory object, but this argument misses the mark. The sporting use reduction does not allow probationers to possess firearms. To the contrary, the probationer who illegally possesses firearms is subject to a range of sanctions. In addition to being subject to probation revocation penalties, he has also committed a federal felony, is subject to federal sentencing, and his probation status may result in an increased criminal history and a greater sentence than he would otherwise receive. The sporting purpose reduction only reduces the defendant's guideline range of sentence by virtue of the lower level of blameworthiness attached to sporting purposes; the guideline does not immunize the defendant from prosecution. Further, if the probationer possessed the firearm for any purpose other than a sporting use, including threatening a probation officer, the reduction would be unavailable. Finally, the guidelines have itemized those individuals to whom the sporting use reduction may not be applied, and the general category "probationers" is not on the list.

A better argument is that the Defendant's possession of a firearm in violation of a probation condition is a violation of a court order and, therefore, represents conduct different in kind from a common criminal offense. However, as has been mentioned, the court imposing the probation is fully capable of imposing a separate penalty for the violation of its probation conditions, tailoring the sanction to meet the nature of the breach. The Government's position here is that the federal court must not apply a reduction otherwise contemplated by the guidelines to such a defendant. The wiser course is to leave the determination as to whether to apply the sporting purpose reduction to the sentencing court, based on the evidence in the case, rather than to impose an unalterable rule of unavailability.

## III.     Conclusion

The fact that a person who was prohibited from possessing a firearm was on probation at the time of his firearms possession offense does not necessarily prevent the application of the sporting purpose reduction under U.S.S.G. § 2K2.1(b)(2). If the probation condition that prevented his possession of a firearm is congruent with the federal criminal law prohibiting the same, the condition is superfluous, prohibiting already illegal conduct. Here, the Court has found that Mr. Lemieux is entitled to the sporting purpose reduction and has sentenced him accordingly.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of November, 2006